1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF WASHINGTON**

8
9

JANE TOTTEN,

No.

                              Plaintiff,

10

COMPLAINT

                    v.

11

*With Jury Demand*

12
13

MICHAEL OSBERG, a Washington State
Patrol Trooper, and JANE DOE OSBERG,
and the marital community comprised thereof;

14

J. DOE WASHINGTON STATE PATROL
SUPERVISORY OFFICERS 1-3; JOHN R.
BATISTE WASHINGTON STATE PATROL
CHIEF.

15
16
17

                    Defendants.

18
19

        COMES NOW the Plaintiff, Jane Totten, through her attorneys of record, Kannin Law

20

Firm P.S., and hereby presents the following claims:

21

**JURISDICTION**

22

1.

23

Jurisdiction is founded upon the existence of a federal question.

24

2.

25

This is an action to redress the deprivation under color of statute, ordinance, regulation,

26

COMPLAINT  - Page 1

**KANNIN LAW FIRM P.S.**
119 SW 152nd Street
Burien, Washington 98166
Tel. (206) 574-0202; Fax. (206) 574-0101
John@kanninlaw.com

custom or usage of rights, privileges, and immunities secured to the plaintiff by the Fourth, and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. § 1983).

3.

Jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343(3) and (4).

4.

Venue is proper in the United States District Court of the Western District of Washington because the acts or omissions which for the basis of the Plaintiff's claims occurred in Grays Harbor County, Washington and the defendants reside in Washington State.

5.

At all times relevant to this complaint, Plaintiff was an individual residing in Thurston County, Washington.

6.

At all times referred to herein Defendant John R. Batiste was employed by Defendant Washington State Patrol as its Chief and is believed to have been the supervising and commanding officer of Defendants J. Doe Washington State Patrol Supervisory Officers 1-3; and Defendant Trooper Michael Osberg.

7.

At all times referred to herein, Defendants J. Doe Washington State Patrol Supervisory Officers 1-3, were employed by Washington State Patrol and are believed to have been the supervising and commanding officers of Defendant Trooper Michael Osberg. At all times referred to herein, Defendant Michael Osberg, was employed by Washington State Patrol.

8.

COMPLAINT  - Page 2

1   Plaintiff sues Defendant trooper Osberg, in his individual capacity, Defendants WSP J.

2   Doe Supervisors 1- 3 in their individual capacities, and Defendant Chief Batiste in his individual

3   capacity as the Chief and the lead policy maker for the Washington State Patrol. At all times

4   relevant to this complaint the defendants were acting under color of law.

**FACTS**

5

6   9.

7   On May 22, 2019, Plaintiff Mrs. Jane Totten was driving south on "D" Line road in the

8   Capitol State Forest, Grays Harbor County, Washington. Her husband Charles Totten was with

9   her in their car and was sitting in the rear seat.  Plaintiff Mrs. Jane Totten was sixty-eight (68)

10   years old on May 22, 2019. Her husband Charles Totten was 90  years old. After driving into the

11   Capitol State Forest Mrs. Totten pulled off the road to park.  Plaintiff came to a complete stop,

12   turned off the ignition and parked her car. Plaintiff had stopped and parked near  a legal camping

13   zone.  After being parked for short time, Plaintiff Totten decided to turn back onto "D" Line

14   road. Plaintiff Mrs. Totten reversed her vehicle so she could pull out onto "D" Line road. As she

15   reversed one of the car's back wheels became stuck in the mud. Plaintiff Totten tried to free her

16   rear tire from the mud but could not get it free, so she called her automobile liability insurance

17   company for roadside assistance and asked for help pulling her stuck vehicle out of the mud so

18   she could drive home. After a while roadside assistance called Mrs.  Totten back and told her

19   they were unable to assist her because they could not confirm her location in the Capitol Forest.

20   The insurance agent for roadside assistance  further  informed Totten that she, the roadside

21   assistance operator had called 911 to further assist  Totten by reporting to the 911 operator that

22   Totten's car was stuck on the side of the road in the Capitol State Forest.

23   10.

24   Soon thereafter Defendant Trooper Osberg arrived on the scene.  Plaintiff Mrs. Totten

25   told the trooper she was stuck and needed help getting traction under her rear tires.  Shortly after

COMPLAINT  - Page 3

26

1   he arrived Defendant Osberg instructed Plaintiff Mrs. Totten to get out of her car. Trooper

2   Osberg disregarded Mrs. Totten's request for help with her stuck car. After the Defendant

3   Trooper Osberg got Plaintiff  Totten out  of her car, Defendant Osberg told Plaintiff Mrs. Totten

4   that he wanted Totten to perform roadside agility tests for him.   Defendant Osberg selected an

5   area on the shoulder of the road and told Mrs. Totten to do the tests at the site he selected for her

6   on the side of the Capitol Forest road. Defendant Osberg also instructed Mrs. Totten on how to

7   do the tests which included a demonstration and verbal instructions. Mrs. Totten complied with

8   Trooper Osberg's instructions and attempted to do the tests he instructed her to perform on the

9   side of the road.  Before starting the tests Plaintiff told Osberg her age, that she was 68 years old,

10  not physically fit, was clumsy, and a bit uncoordinated, thus she would likely not be able to

11  complete the roadside agility tests. Mrs. Totten also told the Trooper she was worried about her

12  90-year-old disabled husband, Charles, who was sitting in the car watching and listening.

13  Trooper Osberg told Plaintiff  he was going to proceed with testing her even though she was 68

14  years old not physically fit and was worried about her husband. After Plaintiff Mrs. Totten

15  attempted the roadside agility tests as instructed by  Defendant Trooper Osberg, Osberg told Mrs.

16  Totten that he thought she was under the influence of alcohol. Plaintiff Totten told defendant

17  Trooper Osberg that she had not consumed alcohol beverages. If anything was making it hard for

18  her to do the tests, it may be that she is 68 years old and not very coordinated. Defendant

19  Trooper did not believe Plaintiff's explanation for her poor test performance. Next the Defendant

20  had Plaintiff Mrs. Totten perform a preliminary breath test (PBT)  there at the roadside. The PBT

21  resulted in .000 blood alcohol concentration reading. Next Defendant Trooper Osberg accused

22  the Plaintiff of being under the influence of marijuana or some other drug. Plaintiff told the

23  Defendant she did not smoke marijuana and had not taken drugs before driving her car. Plaintiff

24  suggested that Defendant Osberg contact his supervisor however Defendant Osberg neither

25  contacted  his supervisor nor did he attempt to contact any other officers or supervisors to further

26  COMPLAINT  - Page 4

1  screen Plaintiff Totten for being under the influence of alcohol or drugs and refused her requests

2  to do so. Defendant Trooper Osberg arrested Mrs. Totten for DUI, in violation of RCW

3  46.52.502, a gross misdemeanor crime.

4                                            11.

5            Plaintiff's husband Charles Totten was sitting in the back seat of  Plaintiff's parked car.

6  He could see and hear what Defendant Osberg was doing, and he saw how Osberg arrested

7  Plaintiff Jane Totten, Mr. Charles Totten's wife. Defendant Osberg searched Mrs. Totten and her

8  car. Defendant Osberg caused Plaintiff's dog Lucy,   who was in the car with her and her

9  husband on May 22, 2019, to be seized and held at an animal hospital/shelter in Grays Harbor

10 County. Defendant Osberg caused the Plaintiff's car to be impounded. Plaintiff's husband

11 Charles Totten, who was  mentally and physically incapacitated was in the back seat of the car.

12 Defendant Trooper Osberg arrested Plaintiff Jane Totten, Charles Totten's wife and care giver,

13 so Charles Totten had to be taken into protective care by a local health care provider.  Defendant

14 Osberg caused Plaintiff's car to be seized, and towed away so that she could not drive it nor

15 could anyone else.

16                                            12.

17           After he arrested the Plaintiff, Defendant Osberg took Plaintiff Totten to the Grays

18 Harbor County jail and booked her into the jail. Defendant Osberg caused a criminal action to be

19 instituted against Plaintiff Totten when Osberg reported to his superiors that Jane Totten had

20 committed the gross misdemeanor crime of DUI and when he prepared a probable cause

21 statement in which Osberg states Jane Totten committed the crime of DUI. Defendant Osberg

22 submitted these allegations to the Grays Harbor County prosecuting attorney's office.

23

24                                            13.

25

26    COMPLAINT  - Page 5

**KANNIN LAW FIRM P.S.**
119 SW 152nd Street
Burien, Washington 98166
Tel. (206) 574-0202; Fax. (206) 574-0101
John@kanninlaw.com

1    The facts collected by Defendant Osberg show that he did not have probable cause to

2    arrest Plaintiff Totten for DUI.

3                                         14.

4    The Grays Harbor County prosecuting attorney elected not to prosecute Plaintiff Totten

5    for DUI.

6

7                                         15.

8    At the Grays Harbor County jail Plaintiff Totten was housed in the general population.

9    When she was in custody at the jail Another prisoner at the jail assaulted Plaintiff Totten. On or

10   about May 25, 2022, Plaintiff Totten was brought from the jail to the Grays Harbor County

11   courthouse for an arraignment hearing based on   The Grays Harbor  County Prosecuting

12   attorney elected not to proceed with a  criminal case against Mrs. Totten. Plaintiff Totten was

13   released from the Grays Harbor County jail.

14                                        16.

15

16   At the time he decided to stop and arrest  Plaintiff Totten, and initiate a criminal

17   prosecution against Jane Totten, Defendant Osberg was employed by  the State of Washington as

18   a State Trooper at the Washington State Patrol. Defendant trooper Osberg arrested Mrs. Totten in

19   his individual capacity as an employee of Defendant Washington State Patrol and arrested

20   Plaintiff Mrs. Totten under color of law. Defendant Trooper Osberg arrested Plaintiff Mrs.

21   Totten without probable cause that Mrs. Totten had committed a crime. Defendant trooper

22   Osberg arrested Mrs. Totten contrary to the laws of the United States of America as further

23   enumerated in the Federal Constitution.

24                                        17.

25
     COMPLAINT  - Page 6
26

On May 22, 2019, and days subsequent Defendants J. Doe  1- 3 WSP Supervisors, and Defendant Chief Batiste were the Washington State Patrol employees responsible for supervising Defendant Osberg.   Defendants J.Doe  1- 3 WSP Supervisors, and Defendant Chief Batiste were responsible for ensuring Defendant Osberg  was adequately and lawfully trained and supervised when carrying out his duties.  The Defendants failed to supervise and train Defendant Osberg such that Osberg applied testing procedures not validated for persons over 65 years of age or for persons with other physical limitations and/or Defendant Osberg failed to consider issues related to test subjects that he was trained to consider.

18.

As a direct and proximate result of the Defendants' acts and failures to act. Plaintiff Totten was publicly embarrassed and humiliated in front of her husband.  Plaintiff Totten also suffered a loss of enjoyment of her own life.  Plaintiff Totten experienced physical pain when she was assaulted in the jail where Defendant brought her after he arrested her. She suffered bodily injuries, mental pain and psychic trauma that required the expenditure of money for treatment.

19.

Before this incident with Defendant Osberg, Plaintiff Mrs. Jane Totten had never been arrested and had no criminal record of any kind. As a direct result of Defendant Osberg's and the other Defendants' errors, acts, and failures to act Plaintiff Totten suffered harms to include the loss of her personal liberty, embarrassment, humiliation, and frustration, and continues to suffer these harms. Plaintiff Totten expended money for medical treatment/counseling and is expected to expend further amounts for additional treatment. Plaintiff Totten incurred otherwise unnecessary attorneys' fees and costs. As a direct and proximate result of Defendant Osberg's

COMPLAINT  - Page 7

**KANNIN LAW FIRM P.S.**
119 SW 152nd Street
Burien, Washington 98166
Tel. (206) 574-0202; Fax. (206) 574-0101
John@kanninlaw.com

1    and the other Defendants' mistakes, acts, and failures to act Plaintiff Totten suffered damages in

2    amount to be proven at trial.

3

4                                              20.

5         As a direct and proximate result of the said acts of the defendants the plaintiff Jane Totten

6    suffered the following injuries and damages:

7         a. Violation of her constitutional rights under the Fourth and Fourteenth Amendments to

8    the United States Constitution to be free from an unreasonable search and seizure of her person

9    and her property;

10        b. Physical and mental pain and suffering requiring the expenditure of money for

11   treatment;

12        c. Economic and non-economic damages incurred and expected to be incurred, in an

13   amount to be established at trial.

14

15   **FIRST CLAIM:  VIOATION OF 42 U.S.C § 1983 AGAINST DEFENDANT MICHAEL**
     **OSBERG IN HIS INDIVIDUAL CAPACITY FOR VIOLATION OF PLAINTIFF'S 4th**
16   **AND 14th AMENDMENT RIGHTS**
     **(ARREST WITHOUT PROBABLE CAUSE)**
17
                                               21.
18
          Plaintiff re-alleges paragraphs 1 through 21 above.
19
                                               22.
20
     42 U.S.C. § 1983 provides in part:
21
     Every person who, under color of any statute, ordinance, regulation, custom, or usage of
22   any State or Territory subjects, or causes to be subjected, any person of the United States
     or other person within the jurisdiction thereof to the deprivation of any rights, privileges,
23   or immunities secured by the Constitution and laws shall be liable to the party injured in
     an action at law, suit at equity or other proper proceeding for redress.
24
                                               23.
25
     COMPLAINT  - Page 8
26
                                                        **KANNIN LAW FIRM P.S.**
                                                        119 SW 152nd Street
                                                        Burien, Washington 98166
                                                        Tel. (206) 574-0202; Fax. (206) 574-0101
                                                        John@kanninlaw.com

Plaintiff Totten had firmly established rights under the Fourth Amendment forbidding unlawful and unreasonable seizure of her person granting her the right  to be free from being arrested without a warrant and without probable cause that plaintiff Totten had committed a crime as well as an established right to be free from being searched without search warrant or an exception to the warrant requirement, and a further right to not have her property taken from her in a warrantless seizure of her dog Lucy and her car.

24.

At all times material herein, defendant Michael  Osberg, acting under color of state law, had a duty to refrain from depriving plaintiff Totten of her constitutional rights.  Defendant Osberg breached the aforementioned Federal statute and breached his legal duties to refrain from depriving plaintiff of her constitutional rights by searching Ms. Totten at the roadside in the Capitol Forest, and illegally arresting plaintiff Mrs. Totten without a warrant and/or without probable cause that she had committed a crime, on May 22, 2019,  which constituted a violation of plaintiff's clearly-established rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, forbidding unlawful and unreasonable seizures.

25.

Defendant Osberg further breached the aforementioned Federal statute and breached his legal duties to refrain from depriving plaintiff of her constitutional rights seizing Ms. Totten's dog Lucy and her Hyundai car,  without a warrant and/or without probable cause that Totten had committed a crime, on May 22, 2019,  which constituted a further violation of plaintiff's clearly-established rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, forbidding unlawful and unreasonable seizures.

26.

At the time he breached his duties to plaintiff Totten defendant Osberg    acted under

COMPLAINT  - Page 9

color of law and was employed by the Washington State Patrol.

27.

Defendants' acts and failures to act caused plaintiff to suffer physical and mental injury, pain, humiliation, and fear as a direct and proximate result of the defendants' acts and failures to act. Plaintiff hereby claims damages for the injuries set forth herein under 42 U.S.C. § 1983 against defendant Osberg  for violation of her constitutional rights under color of law, in amount to be proven at trial.

28.

The conduct of the defendant  was knowing, intentional, reckless, and/or malicious, by reason of which plaintiff is entitled to punitive damages.

**CLAIM:  UNDER 42 U.S.C § 1983 AGAINST WSP J.DOE SUPERVISORS 1 – 3 & CHIEF JOHN R. BASTITE AS SUPERVISOR AND POLICY MAKER FOR VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS (FALSE ARREST/ARREST WITHOUT PROBABLE CAUSE UNCONSTITUTIONAL POLICY PRACTICE OR CUSTOM)**

29.

Plaintiff realleges paragraphs 1 through 28 above.

30.

Prior to May 22, 2019 Defendants WSP J. Doe Supervisors  1 -3 and Defendant John R. Batiste, developed and maintained policies, practices, or customs, by and through which Defendant John R. Batiste, as  Chief supervisor and policy maker oversaw the implementation of the  policies, practices, or customs the officers under his command were tasked by him with following, which demonstrates the Defendant Chief's duty and his J. Does 1-3 Supervisors' duty to properly train and supervise the officers in their force to ensure so that they do intentionally or mistakenly perform their duties in ways that result in  violations of the  constitutional rights of persons in Washington state.

COMPLAINT  - Page 10

**KANNIN LAW FIRM P.S.**
119 SW 152nd Street
Burien, Washington 98166
Tel. (206) 574-0202; Fax. (206) 574-0101
John@kanninlaw.com

31.

At the time of the incident involving plaintiff Totten it is believed that it was the policy, practice, or custom of Defendants WSP J. Doe Supervisors  1 -3 and Defendant John R. Batiste to fail to ensure its employees did not unlawfully arrest people at liberty, for DUI based on road side tests that were shown to not be validate and, or reliable for testing citizen's over 65 years of age, or for those with other physical limitations, and further not having adequate screening of police officer candidates during the hiring process, or adequate training, subsequent supervision, and not having discipline of the WSP Troopers after they were hired and out in the field arresting people, relying upon training that did either not adequately address whether a test subject who was 65 years of age should be tested at all or in the same manner as those under 65 years as set forth in the National Highway Traffic Safety Administrations (NHSTA) guidelines for DUI roadside tests, of if it did the training was not followed and the lack of supervision resulted in the training not being followed.  Defendants did not require appropriate in-service training or retraining of officers who violated the plaintiff's aforementioned rights and other similarly situated citizens.  Defendants' failures to supervise and/or train the officers under their command with regard to testing procedures  and the applicability of the tests to the people they were testing resulted in constitutional violations like that which resulted in Plaintiff's Totten's arrest.

32.

As a result of the above-described policies, practices, and customs, police officers of Defendants WSP J. Doe Supervisors  1 -3 and Defendant John R. Batiste,  defendant Osberg, and other troopers   believed that their actions or inactions would not be properly monitored by supervisory officers and that the defendant officer's misconduct would not be investigated or sanctioned but would be tolerated and/or ratified by Defendants WSP J. Doe Supervisors  1 -3 and Defendant John R. Batiste.

33.

COMPLAINT  - Page 11

**KANNIN LAW FIRM P.S.**
119 SW 152nd Street
Burien, Washington 98166
Tel. (206) 574-0202; Fax. (206) 574-0101
John@kanninlaw.com

1    The above-described policies, practices, and customs of Defendants WSP J. Doe

2  Supervisors 1 -3 and Defendant John R. Batiste demonstrated indifference to the constitutional

3  rights of persons within Washington and were a cause of the violations of plaintiff's Fourth

4  Amendment rights, as alleged herein and the cause of further violations to similarly situated

5  individuals throughout the state of Washington.

6                                                34.

7    Plaintiff Totten claims damages for the injuries set forth above under 42 U.S.C. § 1983

8  against Defendants WSP J. Doe Supervisors 1 -3 and Defendant John R. Batiste. Pierce County

9  for violation of her constitutional rights under color of law in an amount to be proven at trial.

10                                      **JURY DEMAND**

11  The plaintiff respectfully requests trial by jury.

12

13                                    **RELIEF REQUESTED**

14    WHEREFORE, the plaintiff prays for judgment in an amount to be established at trial,

15  including:

16    a. Economic damages to plaintiff against the defendants jointly and severally;

17    b. Non-economic damages to plaintiff against the defendants jointly and severally;

18    c. Reasonable attorney's fees and costs to the plaintiff under 42 U.S.C. § 1988;

19    d. Punitive damages; and

20    e. Such other relief as this court may deem equitable.

21    DATED this 18th day of May 2022.

22                                    KANNIN LAW FIRM P.S.

23

24                          By: _____

25                                    John Kannin, WSBA #27315
                                      Attorney for Plaintiff

26  COMPLAINT  - Page 12